**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TIMOTHY J. TAYLOR,

                                          Plaintiff,

              - v -                                    Civ. No. 9:07-CV-1288
                                                              (NAM/RFT)

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES; D. EATON,
*Senior Corrections Counselor, Gowanda Correctional*
*Facility*; JACK FIX, *Corrections Counselor, Gowanda*
*Correctional Facility*; GEORGE PUNDT, *Correctional*
*Counselor, Cayuga Correctional Facility*; THOMAS
OBERG, *Corrections Counselor, Cayuga Correctional*
*Facility*; NANCY HULIHAN, *Superintendent of Programs,*
*Oneida Correctional Facility*; A. JOSLYN, *Assistant Deputy*
*Superintendent of Programs, Oneida Correctional Facility*,

                                          Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

TIMOTHY J. TAYLOR
Plaintiff, *Pro se*
94-B-2378
Oneida Correctional Facility
P.O. Box 4580
Rome, NY 13442-4580

HON. ANDREW M. CUOMO                          STEVEN H. SCHWARTZ, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Timothy J. Taylor brings this civil rights action, pursuant to 42 U.S.C. §

1983, alleging violations of his constitutional rights stemming from the administration of the New York State Department of Correctional Services' ("DOCS") Sex Offender Counseling and Treatment Program ("SOCTP") at the Cayuga, Gowanda, and Oneida Correctional Facilities.  Dkt. No. 46, Am. Compl.  Three separate Motions for Judgment on the Pleadings have been filed.  The first was filed by Defendants DOCS, D. Eaton and Jack Fix on November 5, 2008; the second by Defendants George Pundt, Nancy Hulihan, A. Joslyn, DOCS, D. Eaton, and Jack Fix on February 24, 2009; and the third by Defendant Thomas Oberg on May 18, 2009.  Dkt. Nos. 50, 79, & 95.  Though three separate Motions have been filed, the legal arguments presented in each Motion are identical.[1]  In all three Motions, Defendants assert that Plaintiff's claims are moot because they are encompassed within the terms of a Settlement Agreement in the case of *Donhauser v. Goord et al.*, Civ. No. 9:01-CV-1535 (N.D.N.Y.), a class action lawsuit to which Defendants argue Plaintiff was a class member.  Thus, we will address these separate Motions as if they were filed as one.

Plaintiff has opposed Defendants' Motions.  Dkt. Nos. 69, 83, & 97.  For the reasons that follow, it is recommended that the Defendants' Motions for a Judgment on the Pleadings be **DENIED in part** and **GRANTED in part**.

## I. BACKGROUND

The following information was derived from the allegations in Plaintiff's Amended Complaint, which, in accordance with FED. R. CIV. P. 12(c), must be taken as true for the purpose of addressing the instant Motions.  Dkt. No. 46, Am. Compl.; *see infra* Part II.A.

On or about January 2005, Plaintiff began his participation in the SOCTP at Cayuga.  Am. Compl. at ¶ 1.  DOCS requires that the SOCTP be successfully completed before parole

---

[1] The reason that three identical Motions were filed appears to be attributable to the staggered effectuation of service of process on the various Defendants.  *See generally* Dkt. Rep.

consideration will be granted; failure to complete the program results in a loss of good-time credits, ineligibility for parole, and longer terms of incarceration regardless of the reasoning for the failure to complete the program.  *Id.*

From the outset of his participation, Plaintiff was required to verbally admit that he sexually abused individuals that were listed in his Pre-Sentence Report, irrespective of whether he was convicted of those crimes or not.  *Id.* at ¶¶ 2-3.  Failure to verbalize such admissions resulted in removal from the SOCTP, and therefore, many inmates "began making things up to satisfy what they thought the Counselors wanted to hear."  *Id.* at ¶ 3.  Plaintiff was "required to admit to crimes for which he was not charged, tried, or convicted," including raping everyone he ever came into contact with, "and upon doing so, received passing evaluations."  *Id.* at ¶ 10 (pp. 8-10).[2]  Plaintiff was also forced to implicate family members in crimes of which they did not participate.  In addition, the SOCTP counselors

> wanted to know about [the inmates'] attorney contacts; payoff[s] to attorneys . . . gifts to victims . . . what evidence [was] destroyed and where it could be found; how often [inmates] moved to avoid prosecution . . . Court evaluations and any Treatment Sessions [inmates] may have participated in; [inmates'] attorney's fees; [and] who in [their families] would go so far as to pay for political favors.

*Id.* (p. 12).

Also, Plaintiff alleges that Defendant Counselors Pundt and Oberg constantly threatened to remove Plaintiff and others from the SOCTP and belittled him with name-calling.  *Id.* at ¶ 3.

Participation in the SOCTP "requires the signing of contract(s) which constantly change to include a longer term of agreement to [participate] in the program, now from 6 months to 2 years, and includes a 'Waiver of Partial Confidentiality' and other forms used for compliance in the

---

[2] Paragraph 10 of the Amended Complaint begins on page 8 and continues through page 19.  Therefore, when citing to that paragraph, we will also provide the page number from which the information came.

program which you sign, but are not allowed to have copies of." *Id.* at ¶ 10 (p. 8).

Plaintiff alleges that there is "no due process for program removal and the unbridled power of the Defendants and [the] counselors" is unchecked. *Id.* at ¶ 10 (p. 11). In that respect, no procedural mechanism exists to challenge one's removal from the SOCTP, nor one's denial of re-admission into the program once removed. *Id.* (p. 13). Furthermore, Plaintiff states that "sexual offenders are removed from [the SOCTP] at five times the rate" of inmates participating in other programs and that "those serving time for sexual offenses are denied parole consideration [at] five times [the rate] [] of the general population, and clearly serve more time [] than those with the same or similar Penal Law Class Offenses." *Id.* (p. 12).

Plaintiff was also belittled and harassed during his time at Gowanda. *Id.* (p. 14). At Gowanda, SOCTP participants had to appear before a "Review Committee," which would extend an inmate's time in the program until his parole board or conditional release date arrived, at which point the Time Allowance Committee would revoke the participant's good-time credits for failure to complete the program. *Id.* (p. 15). Such events befell Plaintiff, who lost six (6) years and eight (8) months good-time credit for failure to complete the SOCTP because "Gowanda gave out so much extra program time that it was impossible to complete the program in time for conditional release or parole." *Id.* Furthermore, there is no avenue to appeal the actions of the Time Allowance Committee. *Id.*

While at Gowanda, Plaintiff alleges that Defendants Jack Fix and Diane Eaton, upon learning that Plaintiff had an action pending in this Court before Judge Hurd in the *Donhauser* case, threatened to extend his time of incarceration, leading Plaintiff to request dismissal of that action. *Id.* (p. 14). After requesting dismissal of that action, Plaintiff was found guilty of a "Tier

*-4-*

Infraction," removed from the SOCTP, denied parole for failure to complete the recommended programming, and assessed an additional two (2) years of incarceration. *Id.* (p. 15).

Thereafter, Plaintiff was moved to Franklin and then again to Oneida. *Id.* (p. 16). At Oneida, Plaintiff was removed from the SOCTP after receiving a Misbehavior Report completely unrelated to the program and serving a thirty (30) day sentence in the Special Housing Unit ("SHU") on that charge. Plaintiff was forced to wait another year before he was re-admitted to the program. *Id.* Other inmates have retained their spot in SOCTP while serving a disciplinary sentence and have been allowed to return to the program upon completion of that sentence, but Plaintiff was treated differently, he alleges, because of his participation in the *Donhauser* case. *Id.*

Plaintiff requests that the Court investigate his accusations, and further asks that this action be assigned to the Honorable David N. Hurd and "made part of the Donhauser case." *Id.* at ¶¶ 7 & 10 (p. 18).

## II. DISCUSSION

### A. Standard of Review

FED. R. CIV. P. 12(c) provides, in pertinent part: "After the pleadings are closed . . . any party may move for judgment on the pleadings." "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted).

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "[T]he issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."
*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing

*Twombly*).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950-51.

## B.  Mootness

Defendants allege that Plaintiff's claims have been made moot by a settlement in the *Donhauser* class action lawsuit.  In *Donhauser*, the lead plaintiff alleged that his Fifth Amendment right against self-incrimination was violated when DOCS officials threatened to deny him good-time credit based on his refusal to participate in DOCS' Sex Offender Counseling Program ("SOCP"),

---

[3] By its opinion in *Bell Atlantic Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 562-63 (2007) (quoting *Conley*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).  In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Id*. at 563.

the program that pre-dated the SOCTP.[4]  Class certification was granted in that case on February 15, 2005.  The class was defined as all "current or former New York State prisoners who have lost or been denied good time credits or have been threatened with the loss or denial of good time credits because of a refusal to admit guilt to criminal sexual conduct as part of the Sexual Offender Counseling Program."  Dkt. No. 95, Defs.' Mem. of Law at p. 2.

Subsequent to the class certification in *Donhauser*, another case, *Taylor v. Dep't of Corr. Servs.*, Civ. No. 9:05-CV-543 (N.D.N.Y.), which was initiated by Plaintiff, was consolidated with *Donhauser.  Donhauser v. Goord*, Civ. No. 9:01-CV-1535, Dkt. No. 136, Order, dated July 22, 2005.  However, Plaintiff voluntarily withdrew his complaint and the consolidated case was dismissed on November 28, 2006. *Taylor*, Dkt. No. 16.

After months of settlement negotiations in the *Donhauser* case, the parties drafted a proposed Settlement Agreement, which was approved by Judge Hurd.  *Donhauser,* Dkt. No. 194, Order, dated May 13, 2008.  Judge Hurd directed that DOCS post the Notice of the proposed Settlement Agreement "in all facility law libraries, general libraries, inmate housing areas, and all Sex Offender

---

[4] According to the *Donhauser* Settlement Agreement:

In October 2001, DOCS instituted a standardized six month long SOCP[.]  In November 2007, following enactment of New York Correction Law § 622, DOCS began implementation of a Sex Offender Counseling and Treatment Program (SOCTP) consistent with current best practices in the field of sex offender treatment.  The new SOCTP provides different levels of treatment based on an offender's risk level as determined utilizing actuarial risk assessment instruments and any special needs of the individual offender.  The new SOCTP includes six month long modular programs for low risk offenders, residential therapeutic community programs staffed by psychologists and licensed social workers for moderate to high risk offenders, and a number of specialty programs for offenders with special needs.

Dkt. No. 79, Defs.' Mot., Ex. B, Settlement Agreement at p. 2 n.2.  The Court takes judicial notice of the Settlement Agreement as it is a public document not subject to "reasonable dispute" in that such information is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b); *Reed v. Alexander*, 2008 WL 3155310, at *1 n.3 (N.D.N.Y. Aug. 4, 2008) (taking judicial notice of an opinion docketed in a Western District of New York case to ascertain facts underlying the habeas petitioner's conviction); *see also Marcus v. AT & T Corp.*, 938 F. Supp. 1158, 1164-65 (S.D.N.Y. 1996) (court may take judicial notice of public documents even if not included in or attached to complaint).

Counseling and Treatment Program areas" and that "each facility Inmate Liaison Committee and Inmate Grievance Resolution Committee [] be provided with a copy of the Notice." *Id.* According to the Settlement Agreement, the Notice was at some point thereafter supplemented by adding the proposed Settlement Agreement, which remained posted until at least August 29, 2008.  Dkt. No. 79, Defs.' Mot., Ex. B, Settlement Agreement at Part I.K.

The Notice identified the nature of the lawsuit, the definition of the certified class, a summary of the proposed Settlement Agreement, and advised that "[t]he settlement of this lawsuit will not become final until the members of the plaintiff class have had an opportunity to object to the Settlement Agreement if they choose to do so." *Donhauser*, Dkt. No. 194, Notice at p. 3. Inmates were directed to make any objections to the proposed Settlement Agreement by writing a letter to the Clerk of the Court for the Northern District of New York to be received no later than July 15, 2008. *Id.* at p. 4.

The parties in *Donhauser* entered into a Settlement Agreement on October 3, 2008. *Donhauser* Dkt. No. 235.  The Settlement Agreement, in sum and substance, provided that upon admission to any DOCS' SOCTP program, each inmate would be given a "Limits of Confidentiality, Partial Waiver of Confidentiality and Acknowledgment" form, which would include the following language:

> I [] understand that I am not required to admit the commission of a particular crime, whether it resulted in the present commitment or not.
>
> Rather, for successful program participation, I may discuss my behavior in general terms without providing the full names of victims, without disclosing the exact dates, times, and places of various sexual offending behavior, and without admitting to any specific crime or the violation of any specific section of the Penal Law.  Nonetheless, I must openly and honestly discuss the behavior that resulted in my incarceration and referral to the program, demonstrate acceptance of the responsibility for the conduct that resulted in my criminal conviction and demonstrate an understanding of my

*-9-*

sexual offending behavior and cycle of abuse.

I have been advised that no written or oral statement made by me in conjunction with treatment services rendered in connection with the Sex Offender Counseling and Treatment Program may be used against me in a subsequent criminal proceeding.

Dkt. No. 79, Defs.' Mot., Ex. B, Settlement Agreement at Part II.1.A.

The Settlement Agreement also stipulated that in the event the plaintiffs' counsel finds that DOCS is not in "substantial compliance" with its terms, he shall bring such findings to the attention of defendants' counsel in order to give DOCS an opportunity to investigate the allegations prior to seeking court intervention. *Id.* at Part II.2.A. By its terms, the Settlement Agreement is to remain in effect for two (2) years from the date of its approval. *Id.* at Part I.M.

Judge Hurd received objections from members of the class, yet he approved the Settlement Agreement on October 17, 2008. *Donhauser*, Dkt. Nos. 238-39. After approving the Settlement Agreement, Judge Hurd dismissed the action, while retaining jurisdiction over the matter in order to assure compliance with the Settlement Agreement. *Id.*, Dkt. No. 237.

In his Amended Complaint, Plaintiff alleges, *inter alia*, that successful completion of the SOCTP depends upon an inmate's admission of crimes for which he has not been charged and/or found guilty. Those allegations mirror the claims brought in *Donhauser*, and persons subjected to such treatment fall within the definition of the class in *Donhauser*. The Settlement Agreement, notwithstanding any objections raised by Plaintiff or any other class member, became binding on the entire class upon its approval by Judge Hurd pursuant to FED. R. CIV. P. 23. *Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002) ("The District Court's approval of the settlement--which binds petitioner as a member of the class--amounted to a final decision of [petitioner's] right or claim sufficient to trigger his right to appeal." (alterations in original) (internal quotation marks and citation omitted)). Although Plaintiff asserts he filed an objection to the approval of the Settlement

Agreement, there is no allegation that he appealed such approval, nor does the docket report from that case reflect that any appeal was filed. *See generally Donhauser* Dkt. Rep. Therefore, the Settlement Agreement is binding on Plaintiff to the extent his claims are the same as those disposed of in *Donhauser*.[5]

However, Plaintiff's claims are not entirely identical to those brought in *Donhauser*. In addition to alleging that he was forced to admit to crimes for which he was not charged and/or found guilty, Plaintiff also makes the following allegations that fall outside of the scope of the certified class in *Donhauser*: (1) he was forced to implicate family members in crimes in which they were not involved; (2) there is no oversight of the counselors who determine whether someone should be removed from or re-admitted to the SOCTP; (3) he was not afforded due process during his appearance before the Time Allowance Committee; (4) those who participate in the SOCTP are removed from that program at a higher rate than inmates who participate in other programs; (5) inmates incarcerated for sex offenses are denied parole at a higher rate than others who have been convicted of similarly serious crimes; (6) he was improperly removed from the SOCTP due to an unrelated infraction; and (7) he was treated differently and retaliated against due to his participation in the *Donhauser* case. *See generally* Am. Compl.

These claims were not alleged in *Donhauser* nor disposed of through the Settlement Agreement, and it is therefore recommended that the Defendants' Motion be **granted** only to the extent that Plaintiff is alleging he was improperly forced to make confessions about crimes he committed in order to participate in the SOCTP.

---

[5] With respect to those claims, Plaintiff is free to contact the plaintiffs' counsel in the *Donhauser* case in order to advise him of any alleged non-compliance with the terms of the Settlement Agreement. Dkt. No. 79, Defs.' Mot., Ex. B, Settlement Agreement at Part.II(2)(A).

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motions for a Judgment on the Pleadings (Dkt.

Nos. 50, 79, & 95) be **GRANTED in part** and **DENIED in part** in accordance with the above

opinion; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).


Date:   August 17, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-12-*